UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. |
| ) | |
| v. ) | VIOLATIONS: |
| ) | |
| MICHELE L. LETOURNEAU, ) | Count One: Making or Subscribing a False |
| ) | Tax Return |
| Defendant. ) | (26 U.S.C. § 7206(1)) |
| ) | |
| ) | Count Two: Cash Structuring |
| ) | (31 U.S.C. § 5324(a)) |

**INFORMATION**

At all times relevant to this Information:

**Introduction**

1. Defendant MICHELE L. LETOURNEAU ("LETOURNEAU") resided in Charlton, Massachusetts, within the District of Massachusetts.

2. Company A, whose identity is known to the Deputy Assistant Attorney General of the United States Department of Justice, Tax Division (the "D.A.A.G."), was a Massachusetts registered corporation involved in the commercial rubbish collection and disposal business servicing sites in Massachusetts and Connecticut. Company A elected to be treated as an S corporation for tax purposes with an effective date of July 1, 1991.

3. From in or about 2007 through at least in or about 2021, LETOURNEAU was the President, Treasurer, Director, Operations Manager and majority owner of Company A. LETOURNEAU owned 52.459% of Company A's shares, with the remaining 47.541% of Company A's shares being owned by Individual A, whose identity is known to the D.A.A.G.

4. The Internal Revenue Service ("IRS") was an agency within the United States

1

Department of the Treasury responsible for administering and enforcing federal revenue laws and regulations regarding the ascertainment, computation, assessment, and collection of taxes owed to the United States by its citizens and residents.

5. In order to accurately assess and collect taxes, the IRS must, among other things, determine taxpayers' actual income, credits, and deductions. To accomplish its mission, the IRS used, among other means, the following means:

> a. Individuals: In general, every citizen and resident of the United States who received gross income in excess of the minimum filing amount established by law for a particular tax year was required to annually make and file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), together with accompanying schedules, with the IRS on or before April 15 of the year following a particular tax year.
>
> Corporations: In general, all domestic corporations in existence for any part of a tax year must file an income tax return for that year, whether or not they had any taxable income. A corporation must file a U.S. Corporation Income Tax Return for an S-Corporation, Form 1120-S ("Form 1120-S"), to report the income, gains, losses, deductions, credits, and other information of a domestic corporation for any tax year covered by an election to be an S corporation. An S corporation does not pay tax on its income. Rather, it passes through any profit or losses to its shareholders, who must include these items on their Forms 1040, where it is taxed as individual income.

6. Federal law requires financial institutions to file a Currency Transaction Report

("CTR") whenever the financial institution engages in a transaction involving more than $10,000 of currency, conducted by or on behalf of the same person on the same day. The financial institution submits the CTR to the Department of the Treasury to help monitor cash transactions in the financial system.

7.  "Structuring" refers to an unlawful attempt to prevent a financial institution from filing a CTR by, among other things, breaking up large currency transactions so that no one transaction at any one financial institution involves more than $10,000 in currency.

### Defendant's Scheme to Skim Corporate Receipts

8.  LETOURNEAU, through Company A, operated a business that oversaw a network of trucks, landfills, and laborers in order to routinely remove rubbish for commercial clients. In exchange for services rendered, Company A primarily received checks from customers based on the invoices issued. The customer checks would be ordinarily written payable to "Company A" or "Company A, Inc."

9.  Beginning in at least in or about 2013 and continuing through at least 2021, LETOURNEAU directed Company A's office staff to separate business receipt checks written to "Company A" from those written to "Company A, Inc." Customer checks written to "Company A, Inc." would be logged into Company A's integrated business software system used to track customer accounts, would be batched and deposited into Company A's business bank account using a remote check scanner, and would be logged into Company A's QuickBooks accounting ledgers as revenues earned. Those checks missing the "Inc." designation would be separated and given to LETOURNEAU after they were logged into Company A's integrated business software system used to track customer accounts, but would not be logged into Company A's QuickBooks

accounting ledgers nor immediately deposited into Company A's business bank account.

10. LETOURNEAU would organize and regularly deposit a vast majority of the Company A checks missing the "Inc." designation into a personal bank account, No. XXXXX5630, which she jointly owned with Individual A and held at Bank A, whose identity is known to the D.A.A.G. Each batched deposit made by LETOURNEAU of Company A checks missing the "Inc." designation would be purposefully kept under $10,000. At the same time or soon after causing the deposits into the personal bank account, LETOURNEAU would withdraw in U.S. currency against the available funds in the personal bank account the exact same amount of the total batched checks deposited, thereby effectively "cashing" the checks and keeping each transaction under the $10,000 CTR threshold.

11. LETOURNEAU instructed Company A office staff not to record into Company A's QuickBooks ledgers the Company A business checks missing the "Inc." designation unless and until any of them were included with the "Company A, Inc." checks remotely deposited into the business bank account, after LETOURNEAU had returned certain of the checks not deposited into the personal bank account. LETOURNEAU personally did not record the skimmed Company A checks missing the "Inc." designation into Company A's QuickBooks ledgers nor did she disclose to the tax return preparers her regular deposit activity of any Company A checks into the personal bank account. As a result, LETOURNEAU caused to be prepared and filed with the IRS, for at least the tax years 2016 through 2020, false and fraudulent Forms 1120S on behalf of Company A which substantially understated Company A's true business receipts. LETOURNEAU also caused to be prepared and filed with the IRS false and fraudulent Forms 1040 for the tax years 2016 through 2020, for herself and for Individual A,

which substantially understated their respective shares of Company A's flow-through income.

12.     To further conceal the skimming of Company A business receipts from the IRS, LETOURNEAU routinely structured deposits of Company A checks missing the "Inc." designation into the personal bank account and the subsequent withdrawal of U.S. currency related to each deposit transaction, thereby keeping each transaction under the $10,000 CTR filing threshold. From in or about January 1, 2016 through December 31, 2020, LETOURNEAU conducted approximately 196 deposit and simultaneous withdrawal transactions as described above against the No. XXXXX5630 account at Bank A, totaling $1,261,724, none of which exceeded $10,000. Approximately 39 of these transactions were in excess of $9,000, but less than $10,000, including 7 transactions between $9,998 and $9,999.51.

13.     By routinely skimming the Company A checks missing the "Inc." designation, which she deposited into the personal bank account and subsequently withdrew as U.S. currency, from in or about January 2016 to in or about December 2020, LETOURNEAU caused Company A's gross receipts to be understated on its Forms 1120S by a total of $1,261,724, as follows:

| 2016 | 2017 | 2018 | 2019 | 2020 | Total |
|---|---|---|---|---|---|
| $226,363 | $268,268 | $296,111 | $276,018 | 194,964 | $1,261,724 |

14.     As a result of the omission of the skimmed Company A gross receipts, LETOURNEAU caused a tax loss to the IRS of approximately $472,167, corresponding to the failure to properly record and report Company A's flow through income by LETOURNEAU and Individual A on their respective Forms 1040 from in or about tax years 2016 through 2020.

## COUNT ONE
Willfully Making and Subscribing a False Tax Return
26 U.S.C. § 7206(1)

The Deputy Assistant Attorney General Charges charges:

15. The D.A.A.G. re-alleges and incorporates by reference paragraphs 1-14 of this Information.

16. From on or about January 1, 2018 to on or about April 15, 2019, in the District of Massachusetts and elsewhere, the defendant,

## MICHELE L. LETOURNEAU,

did willfully make and subscribe a U.S. Individual Tax Return, for the tax year 2018, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter in that the tax return reported total income of $346,003 on Line 6 and total partnership and S corporation income of $187,799 on Schedule E line 32, whereas, as the defendant knew, she had total income and total partnership and S corporation income in substantially greater amounts.

All in violation of Title 26, United States Code, Section 7206(1).

<u>COUNT TWO</u>
Structuring to Evade Currency Transaction Reports
(31 U.S.C. § 5324)

The Deputy Assistant Attorney General further charges:

17. The D.A.A.G. re-alleges and incorporates by reference paragraphs 1-14 of this Information.

18. On or about the date set forth below, in the District of Massachusetts and elsewhere, the defendant,

MICHELE L. LETOURNEAU,

did knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structure, and attempt to structure, a transaction with a domestic financial institution, to wit: a deposit and simultaneous withdrawal of the following amount in a transaction with Bank A, a domestic financial institution:

| Approx. Date of Deposit and Withdrawal | Approx. Number of Checks Combined | Approx. Deposit and Withdrawal Amount |
|---|---|---|
| 3/14/2018 | 30 | $9,999.12 |

All in violation of Title 31, United States Code, Sections 5324(a)(3) and (d).

## STRUCTURING FORFEITURE ALLEGATION
(31 U.S.C. § 5317(c)(1))

The Deputy Assistant Attorney General further finds probable cause to believe that:

19. Upon conviction of the offense in violation of Title 31, United States Code, Section 5324, as set forth in Count Two, the defendant,

MICHELE L. LETOURNEAU,

shall forfeit to the United States, pursuant to Title 31, United States Code, 5317(c), all property, real or personal, involved in the offense and any property traceable thereto.

20. If any of the property described in Paragraph 19, above, as being forfeitable pursuant to Title 31, United States Code, Section 5317(c)(1), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred to, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 19.

All pursuant to Title 31, United States Code, Section 5317(c)(1).

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

By: *(signature)*

JORGE ALMONTE
Assistant Chief
U.S. Department of Justice, Tax Division

GEORGE MEGGALI
Trial Attorney
U.S. Department of Justice, Tax Division

Dated: July 26, 2023